J-A07024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: J.J., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.J. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1599 MDA 2017 |

Appeal from the Order Entered October 4, 2017
in the Court of Common Pleas of Columbia County Orphans' Court at
No(s):  CP-19-DP-0000049-2015

BEFORE:   PANELLA, J., OLSON, J., and STEVENS, P.J.E. *

MEMORANDUM BY OLSON, J.:                    **FILED JUNE 04, 2018**

Appellant, E.J., ("Mother"), appeals from the order entered on October 4, 2017, granting the petition filed by the Columbia County Children and Youth Services ("CYS" or the "Agency"), changing the permanency goal from reunification to adoption for her dependent, male child, J.J. ("Child") (born in September 2015) with C.M. ("Father"), pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.  We vacate and remand.

When Child was born in September 2015, Mother was a 17-year-old adjudicated dependent, who was living in foster care.[1]  On September 14, 2015, the trial court held a hearing regarding whether to adjudicate Child

---

[1] While the record does not provide an explanation for Mother's dependency, she states in her brief that it was based on her truancy from school.  ***See*** Mother's Brief, at 10; 42 Pa.C.S.A. § 6302.

---

\*   Former Justice specially assigned to the Superior Court.

dependent, at which Attorney John McDanel represented Child as his guardian *ad litem*, ("GAL"). Attorney Michael D. Wintersteen, Mother's GAL for her own dependency proceedings, was present and represented Mother. At each of the subsequent permanency review hearings pertaining to Child, both Mother and Child, and their respective GALs were present. When Mother turned 18 years old in June 2016, she signed herself out of care with the Agency and moved out of the foster home, leaving Child in the care of the foster parents. Mother had no legal counsel or GAL at that point in time. On July 29, 2016, G.J., Mother's former stepmother who has since adopted Mother, filed a counseled petition to intervene in Child's dependency case. On August 29, 2016, the trial court denied G.J.'s petition to intervene.

In the meantime, on August 5, 2016, the Agency filed a petition for a permanency review hearing, including the Permanency Plan ("PP") dated July 20, 2016. On August 5, 2016, the trial court entered an order for permanency review hearing, providing that the permanency review hearing would be held on August 26, 2016. The order stated:

**TAKE NOTICE**

YOU SHOULD TAKE THIS PAPER TO AN ATTORNEY AT ONCE. IF
YOU DO NOT HAVE AN ATTORNEY OR CANNOT AFFORD ONE,
PLEASE CONTACT:

TAMI KLINE

Court Administrator
Columbia County Court House

- 2 -

No request for appointment of pro bono counsel will be considered over the telephone. All requests must be made by using the proper form.

Order, 8/5/16 (emphasis in original). The record does not reflect that Mother requested appointed counsel.

On August 26, 2016, the trial court held a permanency review hearing, at which Child and his GAL were present, and Mother appeared, *pro se*. Father was not present, nor was he represented by counsel. In the permanency review order dated August 26, 2016 and entered on September 7, 2016, the trial court found the continued placement of Child in the legal and physical custody of the Agency in foster care was necessary and appropriate. The order noted that the visitation between Mother and Child was suspended in February 2016 based on Mother's wish to have Child adopted.

On November 2, 2016, the Agency filed a petition for a permanency review hearing, attaching a PP dated October 17, 2016. The record does not reflect notice to the parties regarding the appointment of counsel. On November 18, 2016, the trial court held a hearing, at which Child and his GAL were present, and Mother appeared, *pro se*. Father was not present, nor was he represented by counsel. On December 1, 2016, the trial court entered a permanency review order, directing Child's continued placement in foster care. The order noted that the visitation between Mother and Child would be supervised at the Agency's office or at other locations.

On February 3, 2017, the Agency filed a petition for a permanency review hearing, which included a PP dated January 23, 2017. The record does not reflect notice to the parties regarding the appointment of counsel. On February 27, 2017, the trial court held a permanency review hearing, at which Child and his GAL were present, as was Mother, acting *pro se*. Father did not attend, nor was he represented by counsel. In the permanency review order entered on March 11, 2017, dated February 27, 2017, the trial court found the continued placement of Child in the legal and physical custody of the Agency in foster care was necessary and appropriate.

On May 3, 2017, the Agency filed the petition to change Child's permanency goal to adoption. In addition, on May 5, 2017, the Agency filed a petition for a permanency review hearing. Neither Agency petition included notice regarding the parties' right to counsel and/or any contact information as to obtaining court-appointed counsel. In an order dated May 4, 2017 and entered on May 5, 2017, the trial court scheduled the hearing on the goal change petition to occur on July 31, 2017. The order provided the same notice regarding requests for court-appointed counsel that was in the August 5, 2016 order. There is nothing in the record to establish that Mother requested the appointment of counsel to represent her.

On May 26, 2017, the trial court held a permanency review hearing, at which Child and his GAL were present, as was Mother, acting *pro se*. Father did not attend, nor was he represented by counsel. On May 31, 2017, the

trial court entered a permanency review order, dated May 26, 2017. The trial court found the continued placement of Child in the legal and physical custody of the Agency in foster care was necessary and appropriate. The order noted that the visitation between Mother and Child would be supervised at the Agency's office or at other locations. Moreover, the trial court found that Child had been in placement for approximately 20 months.

On August 3, 2017, the trial court entered an order re-scheduling the hearing on the goal change petition from July 31, 2017 to October 2, 2017. In the re-scheduling order, the trial court appointed Attorney Laura Pickle as counsel for Mother, and Attorney Christine Luschas as counsel for Father.

On August 7, 2017, the Agency filed a petition for a permanency review hearing. The petition did not include a notice of the parties' right to court-appointed counsel. In separate orders dated August 9, 2017 and entered on August 10, 2017, the court stated Attorney Laura Pickle was appointed counsel for Mother, and Attorney Christine Luschas was appointed counsel for Father.

On August 25, 2017, the trial court held a permanency review hearing. Child and his GAL attended the hearing, as did Mother and Attorney Pickle. Neither Father nor Attorney Luschas attended. On August 30, 2017, the trial court entered a permanency review order, dated August 25, 2017, that continued legal and physical custody of Child with the Agency in foster care. The order noted that the visitation between Mother and Child would be supervised at the Agency's office or at other locations. Moreover, the trial

court found that Child had been in placement for approximately 23 months. Additionally, the order stated that the Child's GAL concurred with the recommendation of the Agency.

The trial court held a hearing on the goal change petition on October 2, 2017. Child and his GAL were present at the hearing, as were Mother and Attorney Pickle. Attorney Luschas appeared on behalf of Father, who was not present. At the hearing, the Agency presented the testimony of Elizabeth Reams, the caseworker assigned to the case in December of 2015. The Agency also presented the testimony of Brittany Hacker, who became the caseworker in November of 2016. Mother testified on her own behalf.

Based on the testimonial and documentary evidence, the trial court set forth the following factual findings and procedural history.

1. Petitioner is Columbia County Children and Youth Services ("Agency").

2. Respondent [Mother], the natural mother of the child, is 19 years old (DOB June [], 1998).

3. The natural father of the child is [Father]. He has not had contact with the Agency since November 20, 2016, except for notice of the hearing in 2017. He does not oppose the goal change or adoption. He did not participate in the hearing. Counsel was appointed to represent him.

4. [Child] was born [in September 2015]. Mother was a dependent child at that time, in foster care herself. A few days after the child was born, [C]hild and Mother were living in the foster home where they had been residing. The [A]gency had custody of both Mother and [C]hild. A few days later in September 2015, they moved to another foster home where [Child] has lived continuously until the present time.

- 6 -

5. The Agency put a Service Plan and Permanency Plan in place on September 11, 2015. Per the plans, the parents' goals were to take care of [Child], attend parenting classes, and address their mental health issues.

6. In November 2015, Mother moved to another foster home, at her request, without [Child]. She indicated to the Agency that she wished to have [Child] adopted. She continued to visit with [Child] bi-weekly for a couple of months. In early, [sic] 2016, she stopped the visits and reiterated her desire for adoption. In March 2016, Mother indicated that she might want to care for [Child]. But again, in May 2016, she told the Agency that she preferred adoption.

7. Mother continued to attend high school from her foster home and participated in a program that taught living skills for transition to independent living after high school. There was a minor parenting component to the classes. However, they were not parenting classes. [Child] was on an adoption track through November 2016.

8. In November 2016, Mother decided that she wanted [Child] rather than have [Child] adopted. She has visited every other week ever since. The foster parents who have been parenting [Child] continue to be the sole source of support and nurture.

9. When she turned [18] in June 2016, Mother signed out of care with the Agency and went to live with her mother. Through that time, she provided no care for [Child]. She had only visited every other Tuesday a few times.

10. In November 2016, Mother moved in with her ex-stepmother[,] with whom she had a good relationship. She continues to live there.

11. In April 2016, Mother was treated at the emergency room at Susquehanna Health in Williamsport for cutting herself. She was not admitted. The Agency recommended counselling and mobile services. When she signed out of care in June 2016, she indicated that she did not want to continue counselling.

12. The Permanency Plan was revised in June 2016. It required Mother to cooperate with the agency; attend parenting classes; address her mental health issues; and assure care and safety of

[Child]. Through November 2016, except for the high school class[,] which had ended, she did not attend parenting classes. She did receive some counseling but stopped after June 2016. She did not care for [Child] at all, but she cooperated with the [A]gency.

13. In June 2017, the Permanency Plan was updated with the same goals, and Mother reviewed it. Mother indicated that she was still living with her stepmother and stepmother's boyfriend. She had a room set up for [Child] for his return and was expecting to have another child in October 2017. The [f]ather of that child was in the service based in Japan. He plans to be involved with that child, although there are possible plans for a paternity test. Mother had completed four parenting classes but had not completed the parenting course of [ten] classes. She has transportation problems since she has no license and no car. As of June 2017, she graduated from high school. She is not receiving any mental health treatment. She testified that she is still depressed and looking into taking medication or getting treatment.

14. Just prior to the present hearing, Mother's stepmother and stepmother's boyfriend (who may now be married) adopted Mother so that they would have standing in this case and possibly a custody case. Stepmother had petitioned to intervene in this case in July 2016. That petition was denied.

**15. Mother had an attorney appointed for her at the beginning of this case and during the case and for this hearing. She had also consulted with her stepmother with a private attorney during the case in 2016.**

16. In the foster home, [Child] has bonded with the foster parents who wish to adopt. [Child] is healthy and happy. [Child] has been with the foster parents since days after his birth.

17. Mother has been in the presence of [Child] for less than 50 hours since she left [Child] with the foster parents in November of 2015.

18. Mother's progress on her goals has been extraordinarily slow and incomplete. To date, she has not completed the mere [ten] hours of parenting classes. She is not receiving or seeking needed

mental health care. She has not [cared for], nor is she in a position to care for[, Child].

19. By conduct continuing for a period of at least six months immediately preceding the filing of the petition and continuing to the present time, Mother has failed to perform parental duties or to be capable of being a custodial parent.

20. The minor child has been removed from [Mother's] care by the court for a period of at least two years at this point and [18] months at the time of the filing of the petition and the conditions that led to the removal and placement of [Child] continue to exist and Mother has not made substantial progress on meeting her goals.

21. The services or assistance available to Mother are not likely to remedy the conditions which led to the removal or placement within a reasonable period.

22. Father has not attempted to meet any goals set for him and has not had any meaningful contact at all with [Child].

23. Adoption would be in [Child's] best interests.

24. The Children and Youth witnesses were credible.

Trial Court Opinion, 11/13/17, at 2-5 (emphasis added).

On October 4, 2017, the trial court entered an order, changing the permanency goal for Child from reunification to adoption. On October 6, 2017, Mother filed a motion for reconsideration in the trial court. In an order entered on October 9, 2017, the trial court denied reconsideration.

On October 18, 2017, Mother timely filed a notice of appeal, but failed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On October 19, 2017, the trial court directed Mother to file a concise statement within 21 days. Mother timely complied,

filing her concise statement on October 23, 2017. ***See In re K.T.E.L.***, 983 A.2d 745, 747 (Pa. Super. 2009) ("[T]here is no *per se* rule requiring quashal or dismissal of a defective notice of appeal . . . ."). ***Cf. J.P. v. S.P.***, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

In her brief on appeal, Mother raises the following issues:

> 1. Whether [M]other's due process rights were violated when she was not advised she had the right to counsel until a Petition to Change Goal to Adoption was filed after approximately nineteen months of her child being in the custody of Columbia County Children and Youth[?]
>
> 2. Whether the trial court abused its discretion when granting Agency's Petition for Goal Change to Adoption when [M]other was herself, [sic] a seventeen[-]year[-]old dependent child who opted out of care and did not have the benefit of counsel until the goal change petition [for Child] was filed[?]

Mother's Brief at 2.

In her first issue, Mother asserts that, early in the dependency proceedings involving Child, she was represented by her GAL in the dependency case involving herself. ***Id.*** at 6. Mother states that, after she was no longer a juvenile, the court did not advise her that she had a right to a court-appointed attorney in the dependency matter involving Child for several months, and it failed to appoint counsel for her until August 9, 2017. ***Id.*** at 6. Mother claims that she was without representation in Child's dependency case for over one year, from June 2016 until August 2017. ***Id.*** at 7. Mother asserts that the trial court, by failing to appoint counsel to

- 10 -

represent her in Child's dependency case, deprived her of due process of law. Mother argues that, under the Juvenile Act, a party is entitled to representation by legal counsel at all stages of any proceeding. *Id.* at 8, *citing* 42 Pa.C.S.A. § 6337. Mother contends that, in dependency matters in Pennsylvania, all parties have the right to representation by legal counsel, and if a party does not have the financial means to hire an attorney, the court shall appoint an attorney prior to the first court proceeding. Mother's Brief at 8, citing Pa.R.J.C.P. 1151(E). In her second issue, Mother claims that the trial court abused its discretion by finding that she did not make substantial efforts in meeting her goals for reunification, despite testimonial evidence to the contrary. Mother's Brief at 6-7and 13-17.

The Agency responds by arguing that the trial court properly determined that Mother was afforded counsel and that she was not deprived of her guarantee to due process, and that the court did not err or abuse its discretion in granting the change of goal to adoption. Child's GAL concurs with the Agency. Father's counsel, Attorney Luschas states that, since Father failed to communicate with her, she was unable to present a position for Father.

The Pennsylvania Supreme Court set forth our standard of review in a dependency case as follows.

> "The standard of review in dependency cases requires an appellate court to accept findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). We review for abuse of discretion[.]

***In Interest of: L.Z.***, ***A Minor Child***, 111 A.3d 1164, 1174 (Pa. 2015).

With regard to our review of a goal changes in a dependency case, this Court recently set forth the following:

> In cases involving a court's order changing the [court-ordered] goal . . . to adoption, our standard of review is abuse of discretion. To hold that the trial court abused its discretion, we must determine its judgment was manifestly unreasonable, that the court disregarded the law, or that its action was a result of partiality, prejudice, bias or ill will. While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate principles to that record. Therefore, our scope of review is broad.
>
> ***In re S.B.***, 943 A.2d 973, 977 (Pa. Super. 2008) (citations omitted); ***see also In re R.J.T.***, 9 A.3d [at 1190].
>
> In ***In re A.K.***, 936 A.2d 528, 534 (Pa. Super. 2007), this Court stressed that the focus of dependency proceedings is upon the best interest of the children and that those considerations supersede all other concerns, "including the conduct and the rights of the parent." Again, in ***In the Interest of D.P.***, 972 A.2d 1221, 1227 (Pa. Super. 2009), we explained, "In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent will summon the ability to handle the responsibilities of parenting." ***In re N.C.***, 909 A.2d 818, 824 (Pa. Super. 2006) (quoting ***In re Adoption of M.E.P.***, 825 A.2d 1226, 1276 (Pa. Super. 2003)).
>
> With those principles in mind, we outline the relevant considerations set forth in the Juvenile Act regarding permanency planning:
>
> Pursuant to § 6351(f)[] of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family

service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months.

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011). Additionally, courts must consider whether reasonable efforts were made to finalize the permanency plan in effect. *See* 42 Pa.C.S.A. § 6351(f)(5.1).

*In the Interest of L.T.*, 158 A.3d 1266, 1276-1277 (Pa. Super. 2017) (footnote omitted).

Regarding the disposition of a dependent child, section 6351(e), (f), (f.1), and (g) of the Juvenile Act provides the trial court with the criteria for its permanency plan for the subject child. Pursuant to those subsections of the Juvenile Act, the trial court is to determine the disposition that is best suited to the safety, protection and physical, mental and moral welfare of the child.

Regarding procedural due process, this Court has stated: "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa. Super. 1996), *citing*

- 13 -

*Mathews v. Eldridge*, 424 U.S. 319 (1976). Regarding substantive due process, this Court has stated:

> [I]n a dependency case, the liberty interest of [a parent] is not at stake and the risk of erroneous adjudication is so substantially mitigated by safeguards, reviews, and procedures directed toward uniting the family, that due process requires a less didactic approach than in criminal procedures. And, while a dependency proceeding is adversarial in the sense that it places the state in opposition to the parent with respect to the custody of the child . . . it does not implicate the liberty interests of the parent or the child as would be the case of a defendant in a criminal action.

*In re M.B.*, 869 A.2d 542, 546-547 (Pa. Super. 2005) (internal citations and quotation marks omitted). The due process protections afforded in a dependency proceeding, therefore, are not as comprehensive as in a criminal trial. *Id.*

In its Rule 1925(a) opinion, the trial court considered Mother's two issues on appeal together, stating as follows:

> The first issue raised by Mother is that she was denied [her] right to counsel. This argument is incorrect and specious. At the beginning of the case, Mother was appointed her own attorney. (Tr. p. 66). She had an attorney through at least November 2016 (Tr. 76). She and her stepmother were in touch with a private attorney in the summer at least of 2016. She had an attorney for this hearing. She was not deprived of her right to counsel in any way.
>
> Second, Mother alleges abuse of discretion in finding that she did not make substantial progress in achieving her goals for reunification.
>
> > "If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and

- 14 -

> reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child. . . ."

42 Pa.C.S. § 6351[.]

There is no termination petition filed. However, there is an approved adoptive family, ready and willing to adopt. Mother and Father have made no substantial progress to achieve the goals of returning [Child] to Mother. The agency has tried for two years to have Mother take parenting classes, obtain mental health treatment, and be able to take care of [Child]. Minimal progress has been made. Mother is young, but [Child's] best interest is the real concern. Father has in fact abandoned this case.

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B., N.M. Appeal of B.L.*, *supra* (citations omitted). *See also, In re: E.M.*, 908 A.2d 297 (Pa. Super. 2006).

A parent is required to exert herself in maintaining contact and exercise firmness in maintaining a relationship even in difficult circumstances. *In Re: E.M.*, 908 A.2d 297 (Pa.Super.2006).

In this case, Mother's involvement with [Child] has been minimal. For over a year, [Child] was on track to be adopted by foster parents with whom he has now bonded. Mother has visited [Child] in a supervised setting for fewer than [50] hours - about two days - in two years. She has not completed parenting classes. She has not addressed her mental health issues. She has not established her ability in the least to care for [Child]. This court

stated its thoughts on the record after the hearing in this matter, albeit not terrifically artfully, but to the point. *See* Tr. pp. 104-107.

In summary, Mother has not made substantial progress in achieving the reunifications goals, and there is no indication that she will address these issues and or achieve these goals anytime soon. In the meantime, [Child] is growing and maturing in a well-adjusted home, the only home he has known, where he has been raised for over two years.

Trial Court Opinion, 11/13/17, at 5-7.

The Juvenile Act provides that a parent of the subject child in a dependency case has a right to counsel, as does the subject child. The statute regarding the right of a parent to counsel follows:

### § 6337. Right to counsel

. . . [A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter [chapter 63] and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party other than a child appears at a hearing without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. Except as provided under section 6337.1 (relating to right to counsel for children in dependency and delinquency proceedings), counsel must be provided for a child. If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

42 Pa.C.S.A. § 6337.

The statute regarding the right of the child in a dependency proceeding to counsel follows:

### § 6337.1 . Right to counsel for children in dependency and delinquency proceedings

> **(a) Children in dependency proceedings.**—Legal counsel shall be provided for child who is alleged or has been found to be a dependent child in accordance with the Pennsylvania Rules of Juvenile Court Procedure.

42 Pa.C.S.A. § 6337.1.

The Pennsylvania Rules of Juvenile Court Procedure govern the appointment of counsel in dependency proceedings. Rule 1151(E) provides that a trial court must inform an unrepresented parent of his or her right to counsel prior to any dependency proceeding and, if a party does not have the financial means to retain a private attorney, the court shall appoint one for her prior to the first proceeding.

> **E. Counsel for other parties.** If counsel does not enter an appearance for a party, the court shall inform the party of the right to counsel prior to any proceeding. If counsel is requested by a party in any case, the court shall assign counsel for the party if the party is without financial resources or otherwise unable to employ counsel. Counsel shall be appointed prior to the first court proceeding.

Pa.R.J.C.P. 1151(E).

The comment to Rule 1151 states as follows:

> Pursuant to paragraph (E), the court is to inform all parties of the right to counsel if they appear at a hearing without counsel. If a party is without financial resources or otherwise unable to employ counsel, the court is to appoint counsel prior to the proceeding. Because of the nature of the proceedings, it is extremely important that every "guardian" has an attorney. Therefore, the court is to encourage the child's guardian to obtain counsel. Pursuant to Rule 1120, a guardian is any parent, custodian, or other person who has legal custody of a child, or person designated by the court to be a temporary guardian for purposes of a proceeding. *See* Pa.R.J.C.P. 1120.

Pa.R.J.C.P. 1151, Comment.

Rule 1152 provides that a child or other party may only waive his or her right to counsel if the trial court conducts an on-the-record colloquy, stating as follows:

**A. Children.**

(1) *Guardian ad litem*. A child may not waive the right to a guardian *ad litem*.

(2) *Legal Counsel*. A child may waive legal counsel if:

(a) the waiver is knowingly, intelligently, and voluntarily made; and

(b) the court conducts a colloquy with the child on the record.

**B. Other parties.** Except as provided in paragraph (A), a party may waive the right to counsel if:

(1) the waiver is knowingly, intelligently, and voluntarily made; and

(2) the court conducts a colloquy with the party on the record.

**C. Stand-by counsel.** The court may assign stand-by counsel if a party waives counsel at any proceeding or stage of a proceeding.

**D. Notice and revocation of waiver.** If a party waives counsel for any proceeding, the waiver only applies to that proceeding, and the party may revoke the waiver of counsel at any time. At any subsequent proceeding, the party shall be informed of the right to counsel.

Pa.R.J.C.P. 1152.[2]

---

[2] The comment to Rule 1152 provides a list of questions that trial courts should ask to ascertain whether a parent's waiver of counsel is knowing, intelligent, and voluntary. **See** Pa.R.J.C.P. 1152, Comment.

Section 6311 of the Juvenile Act provides for the appointment of a GAL

for the subject child in dependency proceedings, as follows:

**§ 6311.  Guardian ad litem for child in court proceedings.**

**(a)  Appointment.--**When a proceeding, including a master's hearing, has been initiated alleging that the child is a dependent child under paragraph (1), (2), (3), (4) or (10) of the definition of "dependent child" in section 6302 (relating to definitions), the court shall appoint a guardian ad litem to represent the legal interests and the best interests of the child.  The guardian ad litem must be an attorney at law.

**(b)  Powers and duties.--**The guardian ad litem shall be charged with representation of the legal interests and the best interests of the child at every stage of the proceedings and shall do all of the following:

(1)  Meet with the child as soon as possible following appointment pursuant to section 6337 (relating to right to counsel) and on a regular basis thereafter in a manner appropriate to the child's age and maturity.

(2)  On a timely basis, be given access to relevant court and county agency records, reports of examination of the parents or other custodian of the child pursuant to this chapter and medical, psychological and school records.

(3)  Participate in all proceedings, including hearings before masters, and administrative hearings and reviews to the degree necessary to adequately represent the child.

(4)  Conduct such further investigation necessary to ascertain the facts.

(5)  Interview potential witnesses, including the child's parents, caretakers and foster parents, examine and cross-examine witnesses and present witnesses and evidence necessary to protect the best interests of the child.

(6)  At the earliest possible date, be advised by the county agency having legal custody of the child of:

(i) any plan to relocate the child or modify custody or visitation arrangements, including the reasons therefor, prior to the relocation or change in custody or visitation; and

(ii) any proceeding, investigation or hearing under 23 Pa.C.S. Ch. 63 (relating to child protective services) or this chapter directly affecting the child.

(7) Make specific recommendations to the court relating to the appropriateness and safety of the child's placement and services necessary to address the child's needs and safety.

(8) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition and emotional condition.

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court. A difference between the child's wishes under this paragraph and the recommendations under paragraph (7) shall not be considered a conflict of interest for the guardian ad litem.

42 Pa.C.S.A. § 6311 (emphasis added).

The Pennsylvania Juvenile Court Procedure Rule 1154 provides the duties of the GAL as follows:

**Rule 1154. Duties of Guardian *Ad Litem***

A guardian *ad litem* shall:

(1) Meet with the child as soon as possible following assignment pursuant to Rule 1151 and on a regular basis thereafter in a manner appropriate to the child's age and maturity;

\* \* \*

(7) Make any specific recommendations to the court relating to the appropriateness and safety of the child's placement and

services necessary to address the child's needs and safety, including the child's educational, health care, and disability needs;

(8) Explain the proceedings to the child to the extent appropriate given the child's age, mental condition, and emotional condition; and

(9) Advise the court of the child's wishes to the extent that they can be ascertained and present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, determine to the fullest extent possible the wishes of the child and communicate this information to the court.

*Comment:* If there is a conflict of interest between the duties of the guardian *ad litem* pursuant to paragraphs (7) and (9), the guardian *ad litem* for the child may move the court for appointment as legal counsel and assignment of a separate guardian *ad litem* when, for example, the information that the guardian *ad litem* possesses gives rise to the conflict and can be used to the detriment of the child. If there is not a conflict of interest, the guardian *ad litem* represents the legal interests and best interests of the child at every stage of the proceedings. 42 Pa.C.S. § 6311(b). To the extent 42 Pa.C.S. § 6311(b)(9) is inconsistent with this rule, it is suspended. *See* Rules 1151 and 1800. *See also* Pa.R.P.C. 1.7 and 1.8.

"Legal interests" denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. "Best interests" denotes that a guardian *ad litem* is to express what the guardian *ad litem* believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.

Pa.R.J.C.P. 1154 and comment.

Recently, our Supreme Court, in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017) (plurality), held that section 2313(a) of the Adoption Act, pertaining to the involuntary termination of parental rights, requires the trial court to appoint counsel to represent the legal interests of any child involved

in a contested involuntary termination proceeding. *See* 23 Pa.C.S.A. § 2313(a). The Court defined a child's legal interest as synonymous with his or her preferred outcome. The *L.B.M.* Court did not overrule this Court's holding in *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), in which we held that a GAL who is an attorney may act as counsel pursuant to section 2313(a) as long as the dual roles do not create a conflict between the child's best interest and legal interest.

In the opinion announcing the judgment of the Court, Justice Wecht stated the following:

> In dependency cases where the trial court is required to appoint a GAL, the GAL must be an attorney. 42 Pa.C.S. § 6311(a). The GAL is authorized by statute to represent both the child's legal interests and the child's best interests. *Id.* The GAL makes recommendations to the court regarding the child's placement and needs, and must advise the court of the child's wishes, if ascertainable. 42 Pa.C.S. § 6311(b). Further, the statute explicitly provides that any difference between the child's wishes and the GAL's recommendations "shall not be considered a conflict of interest." 42 Pa.C.S. § 6311(b)(9).[4]
>
> _____
>
> [4] Although Section 6311(b)(9) specifically provides that the dependency GAL has no conflict of interest when the child's best interests and legal interests diverge, this Court has suggested that, in such a instances, the GAL should request appointment of legal counsel. Pa.R.J.C.P. 1154 cmt. Indeed, we have suspended Section 6311(b)(9) to the extent that it conflicts with the rule. *Id.* cmt.

*In re Adoption of L.B.M.*, 161 A.2d at 175 (footnote in original).

The permanency review hearing held on August 26, 2016 was the first juvenile dependency proceeding involving Child as the subject dependent child

after Mother was no longer dependent and no longer had her court-appointed GAL. The Agency's petition for a permanency review hearing filed on August 5, 2016, included a notice to the parties regarding the right to counsel. The trial court's scheduling order, entered on that same date, gave notice to the parties concerning the right to appointed counsel. There is nothing in the record that indicates Mother contacted the court to request appointed counsel. There is, likewise, nothing in the record that would establish that the trial court complied with the mandates of section 6337 of the Juvenile Act and Pa.R.J.C.P. 1151(E) in ascertaining whether Mother understood her right, as a party-parent, to have appointed counsel, and desired to waive her right to appointed counsel.[3] The Agency's goal change petition filed on May 3, 2017 did not include a notice to the parties regarding the right to counsel. The trial court's May 4, 2017 scheduling order provided notice to Mother of her right to counsel; however, there is nothing in the record to demonstrate whether Mother requested counsel. The trial court did not appoint counsel to represent Mother until its August 3, 2017 order re-scheduling the hearing on the goal change petition.

---

[3] In this respect, the procedural posture of the instant case differs from that in **In re Adoption of J.N.F.**, 887 A.2d at 778, in which a father, who was incarcerated at the time, was not present at the termination hearing, nor was he represented by counsel. In **J.N.F.**, the father failed to respond to the notice in the termination petition informing him of his right to counsel. A panel of this Court ruled that the father had waived his right to counsel.

As an explanation for its failure to appoint counsel for Mother, the trial court stated, "Mother had an attorney appointed for her at the beginning of this case and during the case and for this hearing. She had also consulted with her stepmother with a private attorney during the case in 2016. . . ." This explanation does not comport with the requirements of section 6337 of the Juvenile Act and Rule 1151(E) of the Pa.R.J.C.P. In the dependency proceedings regarding Child, after Mother was no longer a dependent child herself, she was no longer represented by her GAL, Attorney Wintersteen. Mother was not represented by counsel at four of the five permanency review hearings involving Child spanning a 14-month period. She appeared at those hearings *pro se*. The undisputed fact that Mother's former stepmother, now her adoptive mother, had consulted with a private attorney in 2016 does not obviate the need to comply with the provisions of section 6337 and Rule 1151(E) regarding appointment of counsel for Mother. After the court appointed Attorney Pickle to represent Mother on August 3, 2017, Mother accepted the representation. Attorney Pickle appeared and represented Mother at the permanency review hearing on August 25, 2017, and at the goal change hearing on October 2, 2017.

Further, Mother argues that, while she was still a dependent child, she never had a court-appointed legal counsel, separate from her own GAL, Attorney Wintersteen, in Child's dependency proceedings. *See* Mother's Brief at 8-11. Mother contends that the trial court did not appreciate the potential

conflict of interest presented by her GAL from her own dependency proceedings, Attorney Wintersteen, advising her with regard to the dependency proceedings in which her son was the subject. *Id.* As Mother's dependency proceedings concluded in June of 2016, we may not address whether the attorney appointed to represent her as a GAL in her own dependency proceedings had a conflict of interest in representing her with regard to Child's dependency proceedings. As the trial court failed to comply with the mandates of section 6337 of the Juvenile Act and Pa.R.J.C.P. 1151(E) by failing to appoint counsel for Mother as a party to the juvenile dependency proceedings involving Child after she was no longer represented by Attorney Wintersteen, and the court failed to ascertain whether she desired appointed counsel or was waiving her right to appointed counsel, we must vacate the order changing Child's permanency goal to adoption, and remand the matter to the trial court for further juvenile dependency proceedings regarding Child. If Attorney Pickle is no longer able to represent Mother in the dependency proceedings, then new counsel must be appointed for Mother unless Mother knowingly intelligently and voluntarily waives her right to counsel.

Accordingly, we vacate the trial court order changing Child's permanency goal to adoption, and we remand the matter for further juvenile dependency proceedings involving Child in the trial court.

Order vacated. Appeal remanded to the trial court for further juvenile dependency proceedings regarding Child. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/04/2018